IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MELISSA PSIHUDAKIS and<br>ACHILLES PSIHUDAKIS<br><br>*Plaintiffs,*<br><br>v.<br><br>ABC ADOPTION AGENCY, INC.,<br>RONALD B. PRINCE, FLOYD S. CONTRERAS,<br>PRINCE CONTRERAS PLLC, AND<br>JOEL WALKER<br><br>*Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 19-1117 |

## PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW MELISSA PSIHUDAKIS and ACHILLES PSIHUDAKIS, Plaintiffs

herein, and file this their Original Complaint against Defendants ABC ADOPTION AGENCY,

INC., RONALD B. PRINCE, FLOYD S. CONTRERAS, PRINCE CONTRERAS PLLC and

JOEL WALKER.  In support thereof, Plaintiffs respectfully show this Court as follows:

### I.

### JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the causes of action alleged by Plaintiffs

pursuant to 28 U.S.C. § 1332.

2.      Venue is proper in the Western District of San Antonio because this district is

where a substantial part of the events or omissions given rise to the claim occurred pursuant to

28 U.S.C. § 1391(b)(2).

## II.

## PARTIES

3.      Plaintiffs MELISSA PSIHUDAKIS (hereinafter referred to as "MELISSA") and ACHILLES PSIHUDAKIS (hereinafter referred to as "ACHILLES") are residents of Queens, New York.

4.      Defendant ABC ADOPTION AGENCY, INC. (hereinafter referred to as "ABC") is a Texas corporation doing business in San Antonio, Bexar County, Texas.  Service of process may be had on this Defendant by serving its registered agent, Ronald B. Prince, at 342 W. Woodlawn Avenue, Suite 300, San Antonio, Bexar County, Texas 78212.

5.      Defendant RONALD B. PRINCE (hereinafter referred to as "PRINCE") is an individual believed to be residing in San Antonio, Bexar County, Texas.  Service of process on this Defendant may be had by serving him at 342 W. Woodlawn Avenue, Suite 300, San Antonio, Bexar County, Texas 78212.

6.      Defendant FLOYD S. CONTRERAS (hereinafter referred to as "CONTRERAS") is an individual believed to be residing in San Antonio, Bexar County, Texas.  Service of process on this Defendant may be had by serving him at 342 W. Woodlawn Avenue, Suite 300, San Antonio, Bexar County, Texas 78212.

7.      Defendant PRINCE CONTRERAS PLLC (hereinafter referred to as "PLLC") is a professional limited liability company doing business in San Antonio, Bexar County, Texas. Service of process may be had on this Defendant by serving its registered agent, Ronald B. Prince, at 342 W. Woodlawn Avenue, Suite 300, San Antonio, Bexar County, Texas 78212.

8.      Defendant JOEL WALKER (hereinafter referred to as "JOEL") is an individual believed to be residing in Charlotte, Mecklenburg County, North Carolina.  Service of process on

this Defendant may be had by serving him at 2320 Camalier Lane, Charlotte, Mecklenburg County, North Carolina 28273.

### III.

### FACTUAL ALLEGATIONS

9.      B.B.M. was born on November 24, 2015.  On that same date, a termination suit was filed by Defendant ABC in Bexar County, Texas whereby Defendant ABC sought to terminate the rights of B.B.M.'s biological parents.

10.      Then on or about November 25, 2015, Plaintiff MELISSA and Defendant JOEL, who were married at the time, signed a contract for child placement services with Defendant ABC.

11.      Thereafter, on or about December 2, 2015, an order of termination was signed wherein the rights of B.B.M.'s biological parents were terminated and Defendant ABC was named as the sole managing conservator of B.B.M.

12.      Then on or about November 27, 2017, B.B.M. was conditionally placed with Plaintiff MELISSA and Defendant JOEL, then spouses, in Travis County, Texas.  This conditional placement continued for approximately nine months when, on August 20, 2016, Defendant JOEL brutally assaulted and strangled Plaintiff MELISSA while B.B.M. was present in the home.

13.      Immediately following the assault, on or about August 21, 2016, Plaintiff MELISSA relocated with B.B.M. to New York.  Following the assault, Defendant ABC terminated its contract with Defendant JOEL and revoked Defendant JOEL's status as a prospective adoptive parent.  Defendant ABC also requested that Plaintiff MELISSA allow no

further contact between Defendant JOEL and B.B.M.  Defendant JOEL was later indicted for felony criminal assault in Travis County.  Plaintiff MELISSA thereafter filed for divorce.

14.     Then on or about September 2, 2016, Defendant ABC and Plaintiff MELISSA entered into a new child placement service contract pursuant to which B.B.M. was placed with Plaintiff MELISSA as a single prospective adoptive mother.

15.     The contract requires certain fees and expenses be paid by the prospective adoptive parent.  Such fees and expenses included, but were not limited to, agency fees and legal fees and expenses.  Defendants PRINCE, CONTRERAS, and PLLC were the attorneys and law firm providing legal services for the termination and adoption processes involving B.B.M.

16.     Despite having already paid Defendant ABC the sum of $29,750.00 which included a $16,500.00 "agency fee" which fee was defined to include the "ICPC process (i.e. the Interstate Compact on the Placement of Children which oversees the transfer of a child from one state to another in an adoption or foster situation), Defendant ABC demanded that Plaintiff MELISSA pay another $10,000 to Defendant ABC for the ICPC compliance which Plaintiff MELISSA paid.

17.     Thereafter, Plaintiff MELISSA sought and obtained an order of protection from a family court in New York State which provided that Defendant JOEL should have no contact with Plaintiff MELISSA or B.B.M.

18.     As a result of the assault, Plaintiff MELISSA and Defendant JOEL were investigated by the Department of Family and Protective Services ("CPS").  On or about November 10, 2016, CPS issued a finding of "Reason to Believe" against Defendant JOEL for neglectful supervision of B.B.M.

19.     Despite knowing that his contract with Defendant ABC was terminated, that his status as a prospective adoptive father was revoked, and that Defendant ABC had entered into a new contract with Plaintiff MELISSA, Defendant JOEL, a third party stranger who had not had access to B.B.M. for almost three (3) months, nevertheless filed suit in Bexar County seeking conservatorship and access to B.B.M.  In doing so, Defendant JOEL was intentionally interfering with Plaintiff MELISSA's contract with Defendant ABC to adopt B.B.M.

20.     In February, 2017, at the initial temporary orders hearing in Bexar County state court involving Defendant JOEL's claims, Defendants ABC, PRINCE, CONTRERAS, and PLLC objected to Defendant JOEL having access to B.B.M. but the state court, for some reason, granted Defendant JOEL limited supervised access.

21.     Defendant JOEL and Plaintiff MELISSA were divorced on or about March 31, 2017 in Travis County, Texas.

22.     Then on or about July 5, 2017, Plaintiff MELISSA and Plaintiff ACHILLES got married and continued to reside in New York with B.B.M.

23.     Then in September, 2017, at the second temporary orders hearing in Bexar County state court involving Defendant JOEL's claims, Defendant ABC and Defendants PRINCE, CONTRERAS, and PLLC, Plaintiff MELISSA and Plaintiff ACHILLE's *de facto* attorneys, failed to object to Defendant JOEL's request for access to B.B.M. and instead, encouraged such access despite the existing contract between Defendant ABC and Plaintiff MELISSA.  Defendant JOEL was then granted limited unsupervised access with B.B.M. (i.e. on one Saturday and one Sunday a month at the Long Island Visitation & Family Services, Inc.).

24.     Defendant JOEL later pled guilty to a misdemeanor assault, class A, for family violence, on or about February 22, 2018 and received deferred adjudication.  Defendant JOEL

was also ordered to pay $15,000 in restitution to Plaintiff MELISSA. Despite same, Defendant JOEL had continued access without objection by Defendants ABC, PRINCE, CONTRERAS, and PLLC. In fact, Defendant ABC, and Plaintiffs' *de facto* attorneys, Defendants PRINCE, CONTRERAS, and PLLC, continued to advocate said position throughout the course of the litigation involving B.B.M.

25.     In October, 2018, a petition for writ of mandamus was filed by MELISSA after the denial by the trial judge to dismiss JOEL's underlying lawsuits for lack of jurisdiction. This petition is still pending before the Texas Supreme Court.

26.     Thereafter on or about December 20, 2018, Plaintiff MELISSA and Plaintiff ACHILLES filed a petition to adopt B.B.M. after having the child in their home for the requisite period of time.

27.     Then in March, 2019, a final jury trial was held on Defendant JOEL's request for permanent access to the child. Defendant JOEL was granted permanent access to B.B.M.

28.     Because of the ruling of the trial court and because the Texas Supreme Court has not ruled on the writ of mandamus as to whether or not the underlying trial court even had subject matter jurisdiction to award the relief requested of Defendant JOEL, Plaintiffs requested a postponement of the adoption of B.B.M. Defendant ABC refused and revoked Plaintiffs' status to adopt and took B.B.M. away from Plaintiff MELISSA, who had had the child since the child's birth and Plaintiff ACHILLES, the only real father the child had known for most of his life.

IV.

COUNT I

**BREACH OF CONTRACT – DEFENDANT ABC**

29.     Plaintiffs adopt by reference and incorporate herein the factual allegations contained in paragraphs 9 through 28 above as if set forth herein verbatim.

30.     Defendant ABC breached its contract with Plaintiff MELISSA and Plaintiff ACHILLES, as a third party beneficiary to said contract, by demanding an additional payment of $10,000 despite the ICPC process fee already being inclusive of the agency's fees.

31.     Defendant ABC also breached the contract by its unreasonable delay in making the application to the State of New York for the placement of the child.  Said unreasonable delay resulted not only in a delay in the adoption process but also additional costs for Plaintiffs and ultimately a denial of placement by the State of New York.

32.     Defendant ABC further breached the contract by failing to abide by the terms of the contract (i.e. failing to object to Defendant JOEL's request for access to the child, failing to advocate against Defendant's JOEL's request for access in light of his criminal background, etc.).  Defendant ABC had a duty to advocate for the benefit of Plaintiffs throughout the child placement process yet Defendant ABC failed to do so.

33.     Defendant ABC further breached its contract by failing to comply with Chapter 749 of the Texas Administrative Code which is statutorily imposed on adoption placement agencies.  Pursuant to Chapter 749.1003, B.B.M. had an unalienable right to be free from abuse and neglect.  Pursuant to Chapter 749.1001, Defendant ABC was required to remove the child from any situation where abuse or neglect exists.  Not only did Defendant ABC fail to take action, they failed to request home studies or evaluations as to the fitness and care of the child

while in Defendant JOEL's possession. Rather Defendant ABC took the position that it was okay for Defendant JOEL to have continued access. This conduct by Defendant ABC was in flagrant violation of B.B.M.'s rights, including B.B.M.'s right to be in the most family like setting possible, according to Chapter 749 of the Texas Administrative Code.

34.     As a direct and proximate result of Defendant ABC's breaches of contract, Plaintiffs have been damaged in an amount in excess of three hundred thousand and no/100 dollars ($300,000).

35.     Furthermore, Plaintiffs are seeking an award of reasonable attorney's fees through trial and all levels of appeal, if necessary, pursuant to V.T.C.A. Civ. Prac. & Rem. Code § 38.001.

## COUNT II

## <u>TORTIOUS INTERFERENCE WITH A CONTRACT -<br>DEFENDANT JOEL</u>

36.     Plaintiffs adopt by reference and incorporate herein the factual allegations contained in paragraphs 9 through 28 above as if set forth herein verbatim.

37.     Defendant JOEL was aware that his status to adopt B.B.M. had been revoked and that Plaintiff MELISSA had entered into a new contract with Defendant ABC.

38.     Defendant JOEL willfully and intentionally interfered with Plaintiff MELISSA's contract by filing his underlying suits for conservatorship and access to B.B.M.

39.     Said interference by Defendant JOEL proximately caused Plaintiff MELISSA's injuries in that she and her husband, Plaintiff ACHILLES, have expended thousands of dollars in attorney's fees for having to defend against Defendant JOEL's claims as well as other expenses and the child was ultimately removed from their home.

40.     As a direct and proximate result of Defendant JOEL's actions, Plaintiffs have been damaged in an amount in excess of three hundred thousand and no/100 dollars ($300,000).

## COUNT III

## TORTIOUS INTERFERENCE WITH A CONTRACT – DEFENDANTS PRINCE, CONTRERAS, and PLLC

41.     Plaintiffs adopt by reference and incorporate herein the factual allegations contained in paragraphs 9 through 28 above as if set forth herein verbatim.

42.     Plaintiff MELISSA paid for the services of Defendants PRINCE, CONTRERAS and PLLC by and through her contractual relationship with Defendant ABC.

43.     Defendants PRINCE, CONTRERAS and PLLC were fully aware of Plaintiff MELISSA's contract with Defendant ABC and yet, willfully and intentionally, interfered with said contract by not advocating for the interests of Plaintiff MELISSA (i.e. by failing to object or otherwise oppose Defendant JOEL's request for access to the child and failing to affirmatively remedy Defendant JOEL's access to the child once Defendant JOEL pled guilty to a crime of family violence).   Instead, Defendants PRINCE, CONTRERAS and PLLC failed to take any action, and were a proponent of such access.

44.     Said interference by Defendants PRINCE, CONTRERAS and PLLC proximately caused Plaintiff MELISSA's injuries in that she and her husband, Plaintiff ACHILLES, have expended thousands of dollars in attorney's fees for having to defend against Defendant JOEL's claims as well as other expenses and the child was ultimately removed from their home.

45.     As a direct and proximate result of Defendants PRINCE, CONTRERAS and PLLC actions, Plaintiffs have been damaged in an amount in excess of three hundred thousand and no/100 dollars ($300,000).

## COUNT IV

## BREACHES OF FIDUCIARY DUTY -
## DEFENDANTS PRINCE, CONTRERAS AND PLLC

46.     Plaintiffs adopt by reference and incorporate herein the factual allegations
contained in paragraphs 9 through 28 above as if set forth herein verbatim.

47.     Plaintiff MELISSA paid for the services of Defendants PRINCE, CONTRERAS
and PLLC by and through her contractual relationship with Defendant ABC.

48.     Defendants PRINCE, CONTRERAS and PLLC provided legal services as
Plaintiffs' *de facto* attorneys in all matters concerning the adoption placement.

49.     By counseling Defendant ABC to breach its contractual duties owed to Plaintiffs
by advocating in favor of Defendant JOEL's access to the child and taking no affirmative action
to remove the child from the possession of Defendant JOEL who pled guilty to family violence
constitutes breaches of their fiduciary duties owed to Plaintiffs as their *de facto* attorneys.

50.     Defendants PRINCE, CONTRERAS and PLLC's breaches of their fiduciary
duties has resulted in injury to Plaintiffs, including, but not limited to, adoption costs, legal fees
and costs, travel expenses for court, and associated costs for the care of the child during the time
the child was placed with Plaintiffs.

51.     As a direct and proximate result of Defendants PRINCE, CONTRERAS and
PLLC actions, Plaintiffs have been damaged in an amount in excess of three hundred thousand
and no/100 dollars ($300,000).

## COUNT V

## NEGLIGENCE – DEFENDANTS PRINCE, CONTRERAS AND PLLC

52.     Plaintiffs adopt by reference and incorporate herein the factual allegations
contained in paragraphs 9 through 28 above as if set forth herein verbatim.

53.     Plaintiff MELISSA paid for the services of Defendants PRINCE, CONTRERAS and PLLC by and through her contractual relationship with Defendant ABC.

54.     Defendants PRINCE, CONTRERAS and PLLC provided legal services as Plaintiffs' *de facto* attorneys in all matters concerning the adoption placement.

55.     As such *de facto* attorneys, Defendants PRINCE, CONTRERAS and PLLC owed a legal duty to Plaintiffs to affirmatively prosecute and defend their adoption placement.

56.     Instead, and in direct conflict with same, Defendants PRINCE, CONTRERAS and PLLC breached their duties by supporting and promoting Defendant JOEL's access to the child even to the point of recommending the revocation of Plaintiffs' rights to keep B.B.M. despite the fact that the Texas Supreme Court has not yet ruled on the petition for writ of mandamus, and if the Texas Supreme Court vacates the trial judge's orders and dismisses Defendant's JOEL's claims, it will in effect, overturn Defendant JOEL's access to the child.

57.     An ultimatum was given that Plaintiffs either move forward with the adoption of B.B.M. with Defendant JOEL (i.e. a third party stranger having access to the child) or else have their status as adoptive parents revoked.  B.B.M. was removed from Plaintiffs' home when Plaintiffs declined to move forward.

58.     As a direct and proximate result of Defendants PRINCE, CONTRERAS and PLLC actions, Plaintiffs have been damaged in an amount in excess of three hundred thousand and no/100 dollars ($300,000).

## COUNT VI

### TEXAS DECEPTIVE TRADE PRACTICES ACT
### DEFENDANTS – ABC, PRINCE, CONTRERAS and PLLC

59.     Plaintiffs adopt by reference and incorporate herein the factual allegations

contained in paragraphs 9 through 28 above as if set forth herein verbatim.

60.     Plaintiffs are consumers who acquired child placement services from Defendant ABC and legal services from PRINCE, CONTRERAS and PLLC as prospective adoptive parents of B.B.M.

61.     Defendants violated the Texas Deceptive Trade Practices Act ("DTPA") by engaging in false, misleading or deceptive acts or practices, including, but not limited to:

        (a)     Causing confusion or misunderstanding about the source, sponsorship, approval or certification of the services to be provided;

        (b)     Representing that the services had sponsorship, approval, characteristics, uses or benefits that they did not have;

        (c)     Representing that the services were of a particular standard, quality or grade when they were not; and

        (d)     Engaging in unconscionable acts or courses of conduct.

62.     Defendants represented to Plaintiffs that Defendant JOEL's status as a prospective adoptive parent had been revoked and that Defendants were not going to allow Defendant JOEL to have any further contact with B.B.M.  Despite such representations, Defendants advocated in favor of Defendant JOEL having continued access to B.B.M. even to the point of Defendant ABC's representative testifying in court that she was in favor of Defendant JOEL having contact with B.B.M. - in flagrant disregard to the rights of Plaintiffs as prospective adoptive parents and in complete disregard for the existing child placement contract.

63.     Moreover, as further evidence of Defendants' unconscionable acts or course of conduct, Defendants refused Plaintiffs' request to temporarily postpone the adoption proceeding for B.B.M. until such time as the Texas Supreme Court made a ruling on the pending appellate

matter and instead, arbitrarily revoked Plaintiffs' status as prospective adoptive parents and took B.B.M. away from the only parents the child has known since birth!

64.     Plaintiffs' detrimentally relied on the representations made by Defendants or else Plaintiff MELISSA would have never entered into a new child placement service contract nor would Plaintiffs have expended additional funds demanded by Defendant ABC.

65.     Defendants' actions were the producing cause of Plaintiffs' actual damages in an amount in excess of three hundred thousand and no/100 dollars ($300,000).

66.     Plaintiffs further make a claim for mental anguish as Defendants' actions were intentional.

67.     Plaintiffs are also seeking an award of attorney's fees pursuant to Tex. Bus. & Com. Code § 17.50(d).

68.     Finally, Plaintiffs are seeking an award of treble damages pursuant to Tex. Bus. & Com. Code § 17.50(b)(1) as Defendants knowingly violated the DTPA.

## VII.

## DAMAGES AND JURY DEMAND

69.     Plaintiffs hereby made demand for a jury trial.

WHEREFORE, premises considered, Plaintiffs pray that Defendants be cited to appear and answer herein, and that on final trial, Plaintiffs have judgment as follows:

a)     A judgment against Defendants, jointly and severally, for Plaintiffs' actual damages in the amount of at least THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($300,000.00);

b)     As to Defendants ABC, PRINCE, CONTRERAS and PLLC, a judgment for Plaintiffs' reasonable attorney's fees incurred herein;

c)     As to Defendants ABC, PRINCE, CONTRERAS and PLLC, a judgment for treble damages under the DTPA;

d)     For pre-judgment interest at the highest legal rate;

e)  For post-judgment interest at the highest legal rate from the date of judgment until paid in full;

f)  For all costs of court; and

g)  For such other and further relief, whether special or general, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

ORLANDO & ORLANDO, L.L.P.

/s/ Monica Schulz Orlando
MONICA SCHULZ ORLANDO
TBA #00794436
1021 Main Street, Suite 1150
Houston, Texas 77002
Tel 713.521.0800
Fax 713.521.0842
monicaorlando@orlandollp.com

ATTORNEYS FOR PLAINTIFFS,
MELISSA  PSIHUDAKIS  AND  ACHILLES
PSIHUDAKIS